Calvin Copenhaver et al., Defendants in Error, *v.*
Martin S. Copenhaver et al., Plaintiffs in Error.

June 8, 1880.

1. Under the Statute of Descents and Distributions, the rule of representation
   extends to the descendants of the brothers and sisters of the decedent.
2. Where one dies leaving as his only heirs nephews and grandnephews, the
   nephews take *per capita*, while the grandnephews take *per stirpes*, the
   share of their deceased parent.

Error to the Lincoln Circuit Court, Edwards, J.
*Reversed.*

McKee & McFarland and Dunn & Golbert, for the
plaintiffs in error.

Norton, Martin & Dryden, with whom are Dryden &
Dryden, for the defendants in error.

Hayden, J., delivered the opinion of the court.

The action arose in the Probate Court of Lincoln County,
on motion of the administrator to distribute $10,000 among
the heirs of Jacob Copenhaver, deceased. The agreed
statement of facts is as follows, to wit: —

"*In the matter of the distribution of the estate of Jacob
Copenhaver, deceased.*

" It is agreed by the distributees in the above entitled
matter, that Jacob Copenhaver died in February, 1878,
possessed of a large amount of real and personal property,
leaving no children or their descendants, nor father, mother,
brothers, or sisters living, but left as his only heirs at law
thirty-two nephews and nieces and twenty-five known
grandnephews and nieces and the unknown heirs of one
niece, living at the time of his death. And it is further
agreed that the only questions in this matter submitted
for the decision of the court are : —

"*First.* Do the nephews and nieces living at the time of
the death of said Jacob Copenhaver take *per stirpes* the

share their ancestor would have taken, or do they take *per capita* in their own right?

"*Second.* Do the children of the nephews and nieces take the share their ancestors would have taken if living, or are they by the law of descent cut off from any share of the estate?"

The intestate had seven brothers and sisters; and the nephews and nieces and grandnephews and grandnieces are the descendants, in unequal numbers, of his seven brothers and sisters. The Probate Court ordered the estate to be distributed to the nephews and nieces *per capita*, and to the grandnephews and nieces *per stirpes*, the share of their deceased ancestors. On appeal, the Circuit Court reversed the order of the Probate Court and ordered the fund divided into seven equal parts and then distributed *per stirpes*. Plaintiffs in error complain of this action of the Circuit Court and bring the case here by writ of error.

The questions involved depend upon the construction to be put upon the first and fifth sections of the Statute of Descents and Distributions. Gen. Stats. 1865, p. 518. The descent is, first, to the intestate's " children or their descendants, in equal parts ; second, if there be no children or their descendants, then to his father, mother, brothers and sisters, and their descendants, in equal parts," etc. And the fifth section declares : " When several lineal descendants, all of equal degree of consanguinity to the intestate, or his father, mother, brothers and sisters, or his grandfather, grandmother, uncles and aunts, or any ancestor living, and their children, come into partition, they shall take *per capita* — that is, by persons ; where a part of them are dead and part living, and the issue of those dead have a right to partition, such issue shall take *per stirpes* — that is, the share of the deceased parents."

The case shows that the intestate left living at his death two classes of heirs : first, the nephews and nieces, being children of deceased brothers and sisters; second, the

grandnephews and nieces, being children of nephews and nieces of the intestate. These two classes thus stand in unequal degrees of relationship to the intestate. This being so, it is difficult to see why a case is not presented within the second clause of the fifth section. Owing to the attempt of the draughtsman of that section to make it very comprehensive, yet brief. there is the common difficulty of distributing particular words to the preceding clauses with which the words were intended to be connected. Thus, the word "children," and its application, may give rise to question. But the meaning of the section, so far as the present question is concerned, seems plain.

Under the statute of Charles II. (22 Car. II., c. 10), and the construction put upon it by the adjudged cases, the rule was, that where the distributees all stood in equal degree of relationship to the intestate they all shared equally in the distribution, and in such case they took in their own right. Thus there was no occasion for representation. But where there were two classes, of which one stood in a nearer degree than the other to the intestate, the descent by representation came in, and there was distribution *per stirpes* as to the more remote. Thus, a surviving child took in his own right; but grandchildren also surviving took in right of their parent, the deceased child of the intestate. So, among collaterals those who stood in equal degree to the intestate shared equally, while within the limits prescribed as to collaterals there was representation in the same manner as among lineal descendants. In case of a brother or sister and children of deceased brothers or sisters, the children of the latter took *per stirpes*. If there were only nephews and nieces, all took *per capita*. It would seem to follow that, unless representation among collaterals were limited by express provision, the same rule would apply to a case like this at bar : that the nephews and nieces would take *per capita*, and that the grandnephews and grandnieces would take by representation.

It can hardly be doubted that the intention of our Legislature was to adopt the rule so often declared in English and American decisions. *Walsh* v. *Walsh*, Prec. in Ch. 54; *Stanley* v. *Stanley*, 1 Atk. 455; *Lloyd* v. *Tench*, 2 Ves. sr. 213; *Bowers* v. *Littlewood*, 1 P. Wms. 594; *Miller's Appeal*, 40 Pa. St. 387; *Odam* v. *Caruthers*, 6 Ga. 39; *Hallett* v. *Hare*, 5 Paige, 316; *Kelly* v. *Maguire*, 15 Ark. 555; 4 Kent's Comm. 391*; Williams on Ex. 1498.

It is in view of these rules that we must regard the fifth section. So read, the intent is plain, though there is some confusion, owing to the heaping together of words. The idea of the section is best arrived at by reading the leading words — to which the others are to be subordinated — by themselves, as follows : "Where several lineal descendants, all of equal degree of consanguinity to the intestate, * * * come into partition, they shall take *per capita*. * * * Where a part of them are dead and part living, and the issue of those dead have a right to partition, such issue shall take *per stirpes*." The other words are used only to extend this principle to other classes of distributees ; but who the distributees are to be is fixed, not by the fifth, but by the first section. Given the distributees, the fifth section merely applies to them the above rule deduced by the courts from the statute of Charles II., that where all who are capable of taking are in equal degree of consanguinity to the decedent, they take *per capita;* but where they stand in different degrees, the more remote take by representation.

That this is the meaning of the fifth section, we think clear. If from the word "children," or the words, "and the issue of those dead have a right to partition," a further meaning might be deduced, namely, an intent to cut off collaterals so remote as grandnephews, the obvious answer is that the intent is not plain, and that, in any event, the fifth section must yield to the first. It is the office of the first section to prescribe who shall be distributees. The

purpose of the fifth is merely to say how they who have been made distributees shall take : whether *per capita* or *per stirpes*. The first section carefully uses the word " de- .scendants " in reference to the brothers and sisters of the intestate, and repeats the word as often as the words " brothers and sisters " are used. This word cannot be altered to " children " without changing the whole complexion of the first section ; and this section, being the governing section, must control the fifth and other subsidiary sections. Accordingly, as the grandnephews and grandnieces are descendants of brothers and sisters of the intestate, they are, in view of the first section, distributees ; but as they stand in a more remote degree than the other descendants, they take by representation and not by persons.

The effort of the framers of our statute was, it is clear, to codify the law of descents and distributions, and in the first section to provide rules that should be sufficient in themselves, without reference to other bodies of law. It is difficult to believe that in using the word " descendants," a word as to the meaning of which there is no ambiguity, and which is used no less than eleven times in the section, they did not mean what they said. But, besides this, there is no provision in our statute similar to that in the statute of Charles II., a provision embodied in the statutes of many of the States and the source of many decisions, "*provided*, there shall be no representation among collaterals after brothers' and sisters' children." If it had been the intention of the Legislature to thus qualify our law, a proviso so important and historically so well known would surely have been plainly expressed, and would have appeared in that part of the statute which prescribes the canons of descent. From its non-appearance, as well as from the express words of the first section, the conclusion seems plain that under our statute the rule of representation extends to the descendants of brothers and sisters

of the decedent, and not merely to the children of such brothers and sisters.

The decision of the Circuit Court is reversed, and that of the Probate Court is affirmed. All the judges concur.